# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | |
|---|---|
| **TRACY MURRILL,** | ) |
| **AS PERSONAL** | ) |
| **REPRESENTATIVE OF** | ) |
| **ROBERT VINCENT LOCKE,** | ) |
| **DECEASED** | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **CASE NO.: 1:26-cv-00017-KD-N** |
| **NAPHCARE, INC., MOBILE** | ) |
| **COUNTY, SHERIFF PAUL** | ) |
| **BURCH, KATIE ERICKSON** | ) |
| **ET AL.** | ) |
| | ) |
|     **Defendants.** | ) |

## NAPHCARE ALABAMA LLC'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

COMES NOW Defendant NaphCare Alabama, LLC f/k/a NaphCare, Inc. ("NaphCare")[1], hereby submits this brief in support of its Motion to Dismiss Tracy Murrill's, as Personal Representative of Robert Vincent Locke, deceased

---

[1] NaphCare, Inc., an Alabama corporation, converted to NaphCare LLC, a Texas limited liability company, on October 17, 2025. Thereafter, NaphCare Alabama LLC was formed by the divisive merger of NaphCare LLC on January 28, 2026. In the Agreement and Plan of Merger that created NaphCare Alabama LLC, the Health Services Agreement between Mobile County, AL, the Sheriff of Mobile County, AL, and NaphCare, Inc. (the "Agreement"), along with "[a]ny and all claims or liabilities arising from [the Agreement], the services provided pursuant to [the Agreement] (including any and all active claims and lawsuits … and any other potential claims or liabilities, known or unknown, whether asserted at the time of the Merger or not, including any not specifically listed herein" was allocated to NaphCare Alabama LLC. Accordingly, NaphCare Alabama LLC is the correct defendant to this lawsuit alleging claims arising from the healthcare services provided at the Mobile County Metro Jail pursuant to the Agreement.

("Plaintiff") Complaint for failure to state a claim pursuant to *Federal Rule of Civil Procedure* 12(b)(6).

## INTRODUCTION

This case arises from the death of Plaintiff's Decedent, Robert Vincent Locke ("Locke"), while he was detained at the Mobile County Metro Jail ("MCMJ") in February and March 2024. Specifically, the Complaint alleges Locke recently underwent an MMA embolization four days prior to being booked at MCMJ to treat chronic subdural hematomas. Locke was ultimately found unresponsive and seizing in his cell almost a month later, and passed away on April 24, 2024 at a hospital. NaphCare provided medical services at MCMJ during the relevant time period and has been sued for *Monell* liability under 42 U.S.C. § 1983, and Medical Negligence claims. Separately, Plaintiff asserted a claim against NaphCare employee Nurse Practitioner Katie Erickson and John Does 1-10 for Deliberate Indifference to a serious medical need. Plaintiff's Complaint is devoid of facts to survive a motion to dismiss for failure to state a claim.

## FACTS IN SUPPORT OF DISMISSAL

1. Locke was booked at MCMJ on February 23, 2024, after undergoing an MMA embolization on February 19, 2024 at University of South Alabama Hospital ("USAH") to treat chronic subdural hematomas.[2]

---

[2] Doc. 1 at ¶¶ 27, 30.

2.     The Complaint generally alleges Locke was "booked at MCMJ multiple times in the past" and that MCMJ and "NaphCare personnel" were aware he suffered from Alcohol Use Disorder ("AUD").[3]

3.     Prior to the February 23rd admission at MCMJ, Plaintiff underwent a CT scan on February 21, 2024, which confirmed his subdural hematomas were stable.[4]

4.     Upon booking on February 23rd, Locke was screened and assessed by Nurse Angela Ingram who recommended placement in administrative segregation to monitor his medical issues, placement on a low tier bunk due to being a fall risk, placed on detox watch/under a treatment plan for alcohol withdrawal, and prescribed Keppra for seizure prophylaxis.[5]

5.     The Complaint alleges that Locke was not placed on "any" detoxification protocol or provided medication assisted treatment for his AUD.[6]

6.     Locke refused to attend med pass from February 24, 2024 through March 19, 2024 at least thirteen times, and refused his blood pressure check on at least two of these occasions.[7]

---

[3] Id. at ¶ 22.
[4] Id. at ¶ 29.
[5] Id. at ¶ 31 a. -e.
[6] Id. at ¶ 33; Medication Assisted Treatment is designed to treat opiate use disorder not AUD. Plaintiff also contradicts this argument in ¶ 60 where she represented Locke "had been on detox protocol."
[7] Id. at ¶¶ 34, 36-44, 47-50, 71.

7.    The Complaint makes vague allegations throughout that Locke "refused to take his medication", reported he wasn't "receiving his medication", "had not been consistently taking his medication", but failed to identify the specific medication.[8] Further, on one of these occasions when Locke "refused all medication", he reported only wanting to take his Trazadone.[9] None of the factual allegations explain how a lack of non-specific medication resulted in Locke's expiration almost a month following his transfer to the hospital from MCMJ in late March 2024.[10]

8.    The allegations in the Complaint concede several times that Locke had a history of subdural hematomas, and partially attributes that history to multiple falls.[11]

9.    In addition to the initial screening by Nurse Ingram, the Complaint points to two isolated exams to buttress Plaintiff's claims for medical negligence and deliberate indifference. On March 11, 2024, Dr. Schulte examined Locke and reviewed his chart.[12] Plaintiff alleges Dr. Schulte did not develop a treatment plan for Locke with regard to his recent hematomas, however it's reasonable to infer that

---

[8] Id. at ¶¶ 42, 45, 54, 56, 57, 60, 67.
[9] Id. at ¶ 42.
[10] Id. generally.
[11] Id. at ¶¶ 25, 54, 56-57, 60,
[12] Id. at ¶ 46.

plan would have been put in place by USAH following the MMA embolization administered by its providers, not NaphCare.[13]

10.    Separately, on March 18, 2024, Locke allegedly reported to LPN Sheila Caulton he had fallen in his cell several times and as a result was later examined in the clinic by Nurse Practitioner Katie Erickson.[14] Nurse Erickson allegedly did not document Locke's recent hematomas or "develop a treatment" for him.[15] Again, a logical inference based on the facts is that any treatment plan for his pre-existing, post-op chronic subdural hematomas would have been put in place by USAH following the MMA embolization administered by its providers, not NaphCare or its employees.

11.    Plaintiff contends that because Erickson was aware that Locke had an unsteady gait, was elderly, on detox protocol, had recently fallen, was not taking unspecified medication, and had a history of chronic hematomas that he should have been sent to the hospital.[16] Further, Plaintiff alleges Erickson knew Locke "had symptoms reflective of a serious neurologic condition", based on the foregoing information, which is not specific enough to tie to a neurological deficit even based on a favorable reading of the Complaint.[17]

---

[13] Id.
[14] Id. at ¶¶ 50-54.
[15] Id. at ¶ 54.
[16] Id. at ¶¶ 57-58.
[17] Id. at ¶¶ 57-59.

12.     Plaintiff also alleges the lack of a physical exam to assess Locke's unsteady gait somehow relates to him being found in his cell on March 22, 2024 "unresponsive, seizing, bleeding from the nose, and breathing heavily."[18]   For example, Plaintiff does not allege that Locke's subsequent transfer to the hospital related to a prior fall or a fall sustained on the day of the incident.[19] Further, while the Complaint contends Locke did not receive various exams there is no indication that the function of Locke's cranial nerve, and the alleged failure to perform exams involving eye movement, tongue protrusion, and facial symmetry had any bearing whatsoever on his condition on March 22, 2024.[20] In fact, there is no connection whatsoever.

13.     Locke was transferred to the hospital on March 22, 2024 and ultimately passed away on April 24, 2024 allegedly due to acute hypoxic respiratory failure secondary to aspiration pneumonia and septic shock.

14.     Overall, Plaintiff's Complaint contends that as of March 17, 2024 and March 18, 2024 Locke's "condition" was serious enough to refer him to a hospital "where he would have received consistent imaging and monitoring and timely surgical intervention when the need arose."[21] There are no facts beyond Locke "did

---

[18] Id. at ¶¶ 61-63,  72
[19] Id. generally.
[20] Id. generally.
[21] Id. at ¶ 81.

not come out for medication pass" on March 17th, to support his alleged "condition" requiring a transfer to a hospital.[22]

15.    With regard to NaphCare's alleged customs, Plaintiff merely alleges: "Healthcare personnel routinely fail to assess, monitor, and treat known serious medical issues, including head injuries and seizures", and "Healthcare personnel routinely fail to refer and transfer inmates to outside medical providers, such as hospitals, when medically necessary."[23]

16.    The Complaint contends the foregoing policies are "actively" encouraged by NaphCare because they save money and that they were "well-settled", "pervasive", and "persistent and widespread."[24]

17.    Plaintiff claims NaphCare "routinely disregards" unspecified parameters in regard to the medical care of inmates in "contracts" and "makes cuts in services to save money…".[25] The Complaint goes so far to allege that these unspecified "cuts" allow NaphCare to uniformly "sustain monetary penalties related to fines, settlements, and jury verdicts without material financial consequences."[26]

---

[22] Id. at ¶ 49.
[23] Id. at ¶ 87.
[24] Id. at ¶¶ 88, 90.
[25] Id. at ¶ 92.
[26] Id. at ¶ 93.

18.     Finally, Plaintiff alleges the two vague policies previously mentioned were the "moving force" as it relates to the alleged unconstitutional actions of NaphCare, and its agents, which caused Locke's death.[27]

19.     Plaintiff's unsupported, unfounded, and conclusory factual allegations continue with regard to the diatribe of assertions related to death rates, the number of deaths in facilities in other states, alleged financial penalties assessed against NaphCare, and numerous incidents at NaphCare facilities nationwide, spanning many years and involving different medical issues and employees at different locations.[28]

20.     Plaintiff also points to random isolated events at MCMJ for years 2015, and 2023-2024 but fails to allege facts to show whether the alleged NaphCare customs have any causal nexus to those events or Locke's death.[29]

21.     Further, Plaintiff's Complaint alleges that the vague and barebones unconstitutional policies and practices are driven by profit motive by pointing to unverified news sources as to the general scope of NaphCare's contracts with unidentified facilities in addition to two Massachusetts jails.[30] Specifically, "[t]he counties that NaphCare contracts with typically bear the cost associated with an

---

[27] Id. at ¶ 95.
[28] Id. at ¶¶ 100 – 106 (a) – (x);
[29] Id. at ¶ 140 (a)-(h).
[30] Id. at ¶¶ 114 – 123.

inmate's transport, treatment, and stay at an outside hospital."[31] Further, "NaphCare and the contracting county save money by choosing to keep inmates in jail rather than send them to the hospital."[32]

22.     Plaintiff brazenly alleges that "NaphCare routinely enters into contracts with counties that explicitly or implicitly disincentivize hospital referrals.[33]

23.     Finally, without any basis, Plaintiff alleges that NaphCare increases its revenue "by approximately 30%" by hiring Licensed Practical Nurses versus Registered Nurses" and that LPNs "routinely act beyond their limited scope of practice."[34]

24.     Plaintiff asserted a *Monell* claim against NaphCare reiterating the allegedly unconstitutional policies and procedures discussed above.[35]

25.     Plaintiff asserted a Deliberate Indifference claim against Katie Erickson, and John Does 1-10.[36]

26.     Finally, Plaintiff asserted two medical negligence claims against NaphCare and "the agents and employees" of NaphCare.[37]

---

[31] Id. at ¶ 114.
[32] Id. at ¶ 115.
[33] Id. at ¶ 119.
[34] Id. at ¶ 126.
[35] Id. at ¶¶ 186 – 195; Plaintiff improperly posits Louisiana law governs any potential damages award under *Monell*.
[36] Id. at ¶¶ 205 – 210; Plaintiff improperly posits Louisiana law governs any potential damages award under *Monell*.
[37] Id. at ¶¶ 212 – 216.

## LEGAL STANDARD

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "To avoid dismissal for failure to state a claim, a complaint must include factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017). A well-pleaded complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must be a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)) (alteration in original).

A complaint describing misconduct that is merely *possible*, as opposed to *plausible*, "has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (brackets and internal quotation marks omitted). *See also EEOC v. STME, LLC*, 938 F. 3d 1305, 1313 (11th Cir. 2019). When the allegations of a complaint stop short of excluding "more likely explanations" or an "obvious alternative explanation," the complaint does not state a plausible claim for relief. *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567.

Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal, 556 U.S.* at 678. "A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth - legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I.    *Monell* Liability

It is well-settled that Plaintiff cannot premise a § 1983 claim on NaphCare's role as an employer. Where a private entity like NaphCare "contracts with a county to provide medical services to inmates," it becomes "the functional equivalent of the municipality" for the purposes of liability under § 1983, such that liability may not be based on a theory of *respondeat superior* or vicarious liability. *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997).[38]

---

[38] *See also Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992) (citing *Monell* and explaining that *Monell* applies to private corporations); *Phillips v. Pavirov*, No. 5:19-CV-00888-LCB-HNJ, 2019 WL 4054110, at *7 (N.D. Ala. July 30, 2019), *report and recommendation adopted*, 2019 WL 4038554 (N.D. Ala. Aug. 27, 2019) (citing *Buckner*, 116 F.3d at 452–53, and stating that a "plaintiff may not lodge a claim for deliberate indifference to his medical needs against a corporation based on the actions of its employees" but rather "must demonstrate that his constitutional rights were violated as a result of an established policy or custom of that corporation").

Rather, in order to hold a private entity like NaphCare liable under § 1983, Plaintiff must show: "(1) that [Decedent's] constitutional rights were violated; (2) that [NaphCare] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "To show an unconstitutional policy or custom, plaintiff must identify the policy or custom, connect the policy or custom with the government entity itself, and show that the particular injury was incurred because of the execution of that policy." *Wilson v. Tillman*, 613 F. Supp. 2d 1254, 1266 (S.D. Ala. 2009) (citing *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir. 1984) (en banc)).[39] "A policy is a decision that is officially adopted by the [governmental entity or, in this case, NaphCare], or created by an official of such rank that he or she could be said to be acting on behalf of the [governmental entity]" while "[a] custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). Generally, random acts or isolated incidents are insufficient to establish a custom or policy. *Khoury v. Miami-Dade Cty. Sch. Bd.*, 4 F.4th 1118, 1133 (11th Cir. 2021). Rather, "[t]o establish a policy or custom, it is generally necessary to show a persistent and widespread practice." *Clary v. City of*

---

[39] S*ee also Cook v. Sheriff of Monroe Cnty, Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) ("[O]nly when a 'policy or custom' of a municipality inflicts the injury does § 1983 liability exist.").

*Moundville*, 2016 U.S. Dist. LEXIS 135711 at *8 (S.D. Ala. September 28, 2016). *E.g. Christmas v. Harris Cnty.*, 51 F. 4th 1348, 1355 (11th Cir. 2022) ("A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law.").

Importantly, "[b]roadly referenc[ing] a custom or policy" and the use of "vague, bare-boned, passing reference[s] to a policy or custom, totally devoid of details, is insufficient." *Est. of Brannon v. City of Wetumpka,* 2024 U.S. Dist. LEXIS 160476 at *11 (M.D. Ala. Sept. 6, 2024).[40] "A pattern of similar constitutional violations is ordinarily necessary." *Craig v. Floyd Cnty.*, 643 F. 3d 1306, at 1310. However, "random acts…are insufficient to establish a custom or policy." *Clary v. City of Moundville*, 2016 U.S. Dist. LEXIS 135711 at *8-9. *See also Est. of Brannon*, at *12-13 (explaining for *Monell* liability a plaintiff must generally include specific facts of numerous incidents demonstrating a widespread practice.)

Plaintiff's Complaint fails to identify an official policy of NaphCare's upon which to predicate *Monell* liability. Instead, Plaintiff alleges general and conclusory customs as the basis for her *Monell* liability as follows: (1) failure to assess, monitor, and treat known serious medical issues, including head injuries and seizures; and (2)

---

[40] Citing *Brown v. Elmore Cnty. Comm'n*, No. 2:20-cv-281-RAH, 2022 WL 779772, at *8 (M.D. Ala. Mar. 14, 2022) (dismissing a claim when the complaint had not identified a specific policy or custom); *Johnson v. Andalusia Police Dep't*, 633 F. Supp. 2d 1289, 1301–02 (M.D. Ala. 2009) (dismissing a claim where the alleged violation of rights did not result from any department policy or custom); *Manning v. Mason*, No. 10–cv–925-MEF, 2011 WL 1832539, at *4 (M.D. Ala. May 13, 2011) (dismissing a claim where the plaintiffs failed to identify a specific policy or custom)).

failure to refer and transfer inmates to outside medical providers, such as hospitals, when medically necessary.[41] Plaintiff's Complaint fails to plead facts to support these alleged customs are pervasive and widespread *via* similar constitutional violations or otherwise. Rather, Plaintiff relies almost entirely on incidents that occurred in other facilities in at least eight different states that have no bearing on whether NaphCare had a custom at MCMJ pervasive enough to meet the *Monell* standard.[42]   *E.g. Craig v. Floyd Cnty.*, 643 F. 3d at 1311-1312 (unequivocally explaining the relevant *Monell* inquiry is whether there was a widespread unconstitutional custom or practice that existed within the specific governmental unit at issue). Incidents at geographically distinct facilities involving different employees, different patients, different medical conditions, and different contractual arrangements have no relevant or connection to whether NaphCare maintained an unconstitutional custom at MCMJ.[43] To hold otherwise, would permit a plaintiff to predicate *Monell* liability on a private healthcare contractors nationwide history alone – a result that is wholly inconsistent with the purpose and spirit of *Monell*.

Plaintiff's Complaint also purports to identify incidents at MCMJ but fails to establish these other incidents resulted from the same policy failures at issue here or

---

[41] SOF ¶ 15.

[42] SOF ¶ 19.

[43] For the same reasons, Plaintiff's allegations related to death rates at other facilities (none of which confirm if deaths were even caused by inadequate medical care), and financial penalties assessed by other state or governmental entities are also invalid to plead a requisite widespread unconstitutional custom at MCMJ.

a temporal pattern showing a systematic practice at MCMJ.[44] Finally, Plaintiff's cherry-picked timeframe of the random MCMJ incidents from 2015, 2023, and 2024 would not even be sufficient data to establish a widespread custom. Rather, these are merely random, isolated incidents over a non-sequential three-year period that do not establish any connection to the specific alleged customs identified in Plaintiff's Complaint and cannot demonstrate a pattern that is adequately widespread enough to constitute a custom. *E.g. Est. of Brannon v. City of Wetumpka*, 2024 U.S. Dist. LEXIS 160476 at *11-12 (M.D. Ala. September 6, 2024) (holding isolated occurrences over a twenty-year period were not indicative of a widespread practice and failed to plausibly show a pattern of similar constitutional violations); *Williams v. Alford*, 647 F. Supp. 1386, 1393 – 1394 (M.D. Ala. 1986) (holding four searches conducted by police that were not evidently malicious or unreasonable in scope failed to establish a custom existed wherein searches resulted in unnecessary destruction of property).

Likewise, Plaintiff's attempts to connect NaphCare's alleged customs to cost-cutting financial incentives are unavailing. The Complaint asserts a myriad of conclusory statements concerning unspecified NaphCare contracts with unspecified facilities and unsupported allegations regarding staffing, limiting emergency

---

[44] SOF ¶ 20.

ambulance trips, and caps on hospital visits with fines.[45] The Complaint is devoid of allegations that MCMJ's contract with NaphCare had similar provisions.[46] Once again, what NaphCare allegedly does with other facilities in other states is insufficient to establish a widespread unconstitutional practice at MCMJ. There are also no facts to support any connection between NaphCare's alleged staffing practices and Locke's death. Further, Plaintiff's attempt to predicate *Monell* lability on jury verdicts, settlements, and financial penalties involving other NaphCare facilities as notice of alleged unconstitutional customs or practices at MCMJs also fails. Notice of these types of outcomes does not establish notice of an unconstitutional custom at the specific facility at issue. As such, Plaintiffs' *Monell* claims against NaphCare are due to be dismissed with prejudice.

A. Plaintiff Fails to Plead a Policy or Custom was the Moving Force Behind the Alleged Constitutional Violation Suffered by Locke.

Even if Plaintiff sufficiently identified an unconstitutional policy or custom – which she has not – her *Monell* claim also fails as a matter of law because she did not plead adequate facts to support a causal link between any custom at MCMJ to Locke's death. *Bd. Of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). The causal link is necessary to meet the rigorous standard of culpability for *Monell* liability, which is designed solely to address "*deliberate* action" attributable to

---

[45] SOF ¶¶19, 21- 23.
[46] Additionally, the allegations related to contracts with other entities in other states are unsupported and rely on unverified news reports.

corporate state actors such as NaphCare that is responsible for deprivation of federal rights. *McDowell v. Brown*, 392 F3d at 1292. This standard is not met by the Complaint's conclusory allegations of an entity's alleged general customs or the general allegation that said policies were "the moving force behind the unconstitutional actions of agents of employees of NaphCare."[47] Moreover, there are no facts that link the customs alleged by Plaintiff and Locke's cause of death. The Complaint lacks facts explaining how the alleged failure to assess/treat serious medical issues and failure to refer to outside providers created the medical cause of events that resulted in Locke's death on April 24, 2024 due to acute hypoxic respiratory failure secondary to aspiration pneumonia and septic shock. In fact, Locke was sent out as upon notification of a serious health condition. As such, the deficiencies concerning causal specificity in Plaintiff's Complaint is fatal to her *Monell* claim.

## II.    Medical Negligence

Plaintiff asserts two negligence claims against NaphCare and "agents and employees" of NaphCare that sound in medical malpractice.[48] The Alabama Medical Liability Act ("AMLA") governs all actions "against a healthcare provider for breach of the standard of care…" Ala. Code § 6-5-551 (2026). The AMLA directs

---

[47] Compl. at ¶ 95.
[48] To the extent Plaintiff's medical negligence claims are subsumed within Alabama's wrongful death statute, the AMLA's heightened pleading requirements still apply.

that any plaintiff filing an action against a healthcare provider "shall include in the Complaint filed in the action a detailed specification and factual description of each act and omission alleged by Plaintiff to render the healthcare provider liable to Plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts." *Id.* In short, Alabama law requires a plaintiff to not only give a healthcare provider notice of its allegedly negligent conduct, but also to "identify the time and place it occurred and the resulting harm." *Mikkelsen v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993). Failure to meet this standard results in "dismissal for failure to state a claim upon which relief may be granted." Ala. Code § 6-5-551.

A. Plaintiff Fails to State a Claim against NaphCare.

Where, as here, the defendant is a corporate entity, Ala. Code § 6-5-551 requires a plaintiff to expressly plead *the employee* alleged to have breached the applicable standard of care and provide the requisite specification and factual detail of all acts or omissions by that employee alleged to render the corporate entity liable to the plaintiff. *See Husby v. South Ala. Nurs. Home,* 712 So. 2d 750, 753 (Ala. 1998) (Under the AMLA, "the focus should be on the individual [person] whose specific action is alleged to have fallen below the standard of care."). Thus, Plaintiff can only establish liability of NaphCare under the AMLA *if she establishes liability of one of more of NaphCare's agents*. *See id.* at 752-53; *see also Kruse v. Corizon, Inc.,* 2013 U.S. Dist. LEXIS 94151, at *32-33 (S.D. Ala. July 5, 2013) (where the defendant "is

an entity" § 6-5-551 is not "satisfied by glittering generalities about the entity, without any need to address the conduct of the individual for whose wrong the entity may be liable…the complaint must satisfy the statute with respect to [the individual] directly"); *Barton v. Amer. Red Cross,* 829 F. Supp. 1290, 1301 (M.D. Ala. 1993), *aff'd* 43 F.3d 678 (11th Cir. 1994) ("where the defendant is a non-individual, such as a professional corporation or a medical institution, which has acted through another individual health care provider, the focus should be on the individual practitioner whose specific action allegedly fell below the required standard of care"). The basis of § 6-5-551 is designed "to avoid surprise and allow for preparation of a defense by requiring full disclosure to health-care providers of each and every way in which the plaintiff alleges the provider failed to provide proper care." *Long v. Wade,* 980 So. 2d 378, 390 (Ala. 2007) (Murdock, J., concurring). NaphCare cannot prepare a defense if it does not know whose conduct it is defending, or which medical or nursing specialty's standard of care is implicated.

Here, while Plaintiff pleads various interactions between Locke and alleged NaphCare employees, Plaintiff's Complaint fails to identify the applicable standard of care and which acts or omissions breached that standard of care. In short, the Complaint wholly fails to put Defendant on notice of its alleged wrongdoing. Indeed, Plaintiff fails to identify the individual practitioners for whom she attempts to hold NaphCare liable under her medical negligence claims and only asserts those

claims against NaphCare and unspecified agents and employees of NaphCare. Generic allegations of inadequate medical care fail to meet the heightened pleading requitement of § 6-5-551. *See Mikkelsen*, 619 So. 2d at 1384. Without the requisite specificity, NaphCare does not have appropriate notice as to the claims being alleged against it.

B. The Complaint Fails to State a Claim Against the Doe Defendants.

Fictitious party pleading is generally not permitted in federal court. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). The Eleventh Circuit has "created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the worst, surplusage.'" *Jackson v. Gonzalez*, 2020 U.S. Dist. LEXIS 162413 at *10 (S.D. Fla. Sept. 2, 2020) (citing *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)). That limited exception is inapplicable in the instant case where Plaintiff has provided no substantive description of the unnamed "John Does 1-5" aside from alleging they are "NaphCare employees or agents who participated in Mr. Locke's assessment and/or treatment during the relevant time period", generally had knowledge of Mr. Locke's lack of medication compliance, fall history, and an unsteady gait. etc.[49] Simply put, Plaintiff has not given sufficient information which would help narrow down these specific

---

[49] Compl. at ¶¶ 19, 56, 60.

providers' identities out of the numerous licensed practical nurses, registered nurses, nurse practitioners, and other health care providers that NaphCare employed at MCMJ during the relevant time period. Plaintiff's description of unnamed and undescribed providers is not merely "surplusage" and leaves NaphCare guessing as to which alleged employee's actions are at issue. Without the requisite specificity, NaphCare does not have appropriate notice as to the claims being alleged against it. As such, the Doe defendants are due to be dismissed from the instant action. *See, generally, Henley v. Byers*, 2014 U.S. Dist. LEXIS 114510 at *23 (N.D. Ala. July 11, 2014) (holding "failure to assert specific factual allegations directed toward specific [Doe] defendants is grounds for dismissal").

NaphCare cannot prepare a defense if it does not know whose conduct it is defending, or which medical or nursing specialty's standard of care is implicated. Accordingly Plaintiff's Complaint must be dismissed.

## <u>CONCLUSION</u>

For the reasons set for that above and NaphCare's contemporaneously filed motion, NaphCare Alabama LLC f/k/a NaphCare, Inc. respectfully requests that the *Monell* claim and medical negligence claims against it be dismissed.

Respectfully submitted,

_s/ Jessica A. Hornbuckle_
Jessica A. Hornbuckle (ASB-2464-E98L)
Blackstone Trial Group
1200 Corporate Dr., Suite 425
Birmingham, Alabama 35242
Telephone: (2659) 241-4619
E-mail:  jessica@blackstonetrial.com
_Counsel for Defendant, NaphCare, Inc._

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2026, I electronically filed the foregoing with the CM/ECF system, which will send electronic notification of such filing to the following:

Aaron Maples
Maples, Connick & Brendel, LLC
411 St. Francis St., Ste. B
Mobile, AL 36602
Email: aaron@maplesconnick.com

Sam Harton (Admitted _Pro Hac Vice_)
Romanucci and Blandin, LLC
321 N. Clark St.
Chicago, IL 60654
Email:sharton@rblaw.net

_s/Jessica A. Hornbuckle_
Jessica A. Hornbuckle (ASB-2464-E98L)
OF COUNSEL

22