**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| **TRACY MURRILL, As Personal Representative of Robert Vincent Locke, deceased** | ) ) ) ) ) | |
| **Plaintiff,** | ) ) | **CIVIL ACTION NO.: 1:26-CV-00017-KD-N** |
| **v.** | ) ) | |
| **SHERIFF PAUL BURCH, et al.,** | ) ) ) | |
| **Defendants.** | ) | |

<u>**DEFENDANT KATIE ERICKSON'S BRIEF IN SUPPORT OF**</u>
<u>**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**</u>

COMES NOW, Defendant Katie Erickson[1] ("NP Erickson"), by and through counsel of record, and submits this Memorandum in support of her Motion to Dismiss this case for failure to state a claim upon which relief may be granted.[2]

## I.    STATEMENT OF THE CASE

This is an action filed by Tracy Murrill, as Personal Representative for Robert Vincent Locke, alleging civil rights violations under 42 U.S.C. § 1983 and claims of negligence that arise out of the care and treatment of inmate Robert Vincent Locke ("Locke") during his incarceration at Mobile County Metro Jail in February and March 2024.[3] NP Erickson is a nurse practitioner

---

[1] In their initial notice of appearances, counsel represented that "Erickson" was the incorrect last name. Upon further investigation, counsel has determined that "Erickson" is indeed the correct last name and the case caption properly identifies the Defendant.

[2] NP Erickson incorporates by reference, as if fully stated herein, Defendant NaphCare's brief in support of its motion to dismiss (Doc. 7, PageID.59-61; Doc. 8, PageID. 62-83).

[3] Doc. 1, *Complaint* (PageID.1-47).

who rendered medical care at Mobile County Metro Jail from September 2023 to April 2024. During that time, she was employed as a nurse practitioner and a contractor of NaphCare, Inc.[4]

On January 26, 2026, Plaintiff filed a complaint against NaphCare, Inc., Mobile County, Sheriff Paul Burch, Katie Erickson, and John Does 1-10 alleging claims of negligence and violations of Locke's rights under the Fourteenth Amendment to the United States Constitution, and more specifically, that healthcare personnel failed to assess, monitor, and treat Locke's allegedly known medical issues and failed to refer and transfer Locke to outside medical providers when it was allegedly medically necessary.

Defendant NP Erickson moves to dismiss all claims asserted against her because Plaintiff's civil-rights and negligence theories fail as a matter of law. Even if accepting the Complaint's allegations as true, Plaintiff does not plausibly allege that NP Erickson acted with deliberate indifference, consciously disregarded a substantial risk of serious harm, or deviated from the applicable medical standard of care. The pleaded facts reflect, at most, the exercise of medical judgment that Plaintiff now challenges in hindsight, or allegations sounding in ordinary negligence. Neither is sufficient to support a constitutional claim or a viable negligence claim. Because Plaintiff has failed to allege facts establishing any actionable misconduct by NP Erickson, all claims against her should be dismissed with prejudice.

## II.    STATEMENT OF FACTS

The following facts are principally based on the Plaintiff's allegations in the Complaint.[5]

1.    Locke was booked into Mobile County Metro Jail on February 15, 2024, and was

---

[4] *Id.* at ¶ 18, Doc. 1, PageID.4.
[5] Doc. 1. (PageID.1-47)

sent to University of South Alabama Hospital ("USAH") via medical release on February 16, 2024.[6]

2.    While Locke was hospitalized at USAH, he underwent a CT scan of his head and spine.[7] The CT scans revealed he had two subacute chronic subdural hematoma in his brain, a midline shift, moderate cerebral atrophy, chronic small vessel ischemic disease, and degenerative changes in some of his vertebrae.[8]

3.    He received an MMA embolization to treat his chronic subdural hematomas on February 19, 2024.[9]

4.    Locke was discharged from USAH on February 20, 2024.[10]

5.    On February 21, 2024, Locke underwent a follow-up CT scan after his embolization which showed no change in the size of his hematomas and that his midline shift had gotten smaller.[11]

6.    Locke was arrested and booked again into Mobile County Metro Jail on February 23, 2024, where upon admittance he was subject to an initial screening and physical examination by Nurse Angela Ingram.[12] At the time of his booking on February 23, 2024, it was the understanding of NaphCare and its providers, including NP Erickson, that Locke had received the appropriate care while at USAH, and was discharged in a condition that did not require further hospitalization.

---

[6] Doc. 1, PageID.5.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] Doc. 1, PageID.6
[11] *Id.*
[12] *Id.*

7.      Nurse Ingram recommended that Locke should be placed in administrative segregation for medical monitoring, assigned to a bottom bunk because of his fall risk, provided with an alcohol withdrawal treatment plan, and prescribed Keppra to prevent seizures.[13]

8.      Plaintiff claims Locke was not put on detox protocol or given any treatment for a known Alcohol Use Disorder.[14]

9.      Although Plaintiff fails to ultimately specify which medication Locke declined,[15] between February 24, 2024 through March 19, 2024, Locke refused medication at least thirteen times and declined blood pressure checks on at least two occasions.[16] The Complaint is devoid of any connection between Locke's refusal to take his unspecified medications and his subsequent death, particularly in light of the fact that he spent a month hospitalized after leaving the jail and before passing away.

10.      The Complaint cites two additional exams, apart from the initial screening conducted by Nurse Ingram, as part of the allegations of medical negligence and deliberate indifference to a serious medical need. On March 11, 2024, Dr. William Schulte saw Locke and reviewed his chart.[17] Plaintiff alleges a treatment plan was not developed for Locke regarding his hematomas.[18] Providers at USAH performed Locke's MMA embolization and discharged him just weeks prior to this exam; it is reasonable to infer a treatment plan was established prior to

---

[13] Doc. 1, PageID.6

[14] Doc. 1, PageID.6. In ¶ 60 of Plaintiff's Complaint, it is represented that Locke "had been on detox protocol."

[15] The Complaint notes he was on at least more than one medication. *See* Doc. 1, PageID.7, 42 "On March 6, 2024, Mr. Locke refused all medication and a blood pressure check, stating *he only wanted to take his Trazadone.*" (emphasis added).

[16] Doc. 1, PageID.7-8, 11.

[17] Doc. 1, PageID.8.

[18] *Id.*

PD.61270544.1

discharge. The Complaint does not provide facts to contradict this or to suggest that Dr. Schulte was unaware of USAH's care and treatment.

11.     Plaintiff then alleges on March 18, 2024, Locke reported to LPN Sheila Caulton, that he had experienced multiple falls within his cell.[19] On the same day, he was evaluated by NP Erickson who allegedly did not document his recent hematomas or develop a treatment plan for him.[20] However, it remains reasonable to conclude, based on the record, that a treatment plan was established by the University of South Alabama Hospital providers following Locke's discharge after his MMA embolization just weeks prior.

12.     Plaintiff alleges that NP Erickson was aware of Locke's age, unsteady gait, fall risk, history of alcohol use disorder, participation in a detox protocol, and alleged medication noncompliance, and contends that these factors required referral to outside medical care.[21] Plaintiff further asserts, in conclusory fashion, that Locke exhibited "symptoms reflective of a serious neurological condition"[22] and that NP Erickson should have performed a more extensive physical or neurological examination. [23] These allegations, even if accepted as true and viewed in the light most favorable to Plaintiff, do not plausibly establish that referral to a hospital was medically required at the time of NP Erickson's evaluation. Plaintiff does not allege what specific clinical findings demonstrated a serious neurological condition, what additional examination would have revealed, or how any alleged omission deviated from the applicable standard of care or altered Locke's outcome.

---

[19] Doc. 1, PageID.8-9.
[20] *Id.*
[21] *Id.*
[22] Doc. 1, PageID.9.
[23] Doc. 1, PageID.10.

PD.61270544.1

13.     Plaintiff attempts to link an allegedly inadequate physical examination by NP Erickson on March 18, 2024, to Locke being found in his cell four days later "unresponsive, seizing, bleeding from the nose, and breathing heavily."[24] The Complaint, however, pleads no facts supporting such an inference. Plaintiff does not allege that Locke's eventual transfer to the hospital was precipitated by a fall, nor does the Complaint allege that Locke exhibited signs on March 18 indicating an emergent neurological condition.

14.     Locke was transferred to the hospital on March 22, 2024, and did not pass away until more than a month later, on April 24, 2024. His death was allegedly caused by acute hypoxic respiratory failure secondary to aspiration pneumonia and septic shock—conditions that are clinically distinct from, and unrelated to, the circumstances for which he was initially admitted to the hospital.[25]

15.     Based upon these facts, Plaintiff asserts a Deliberate Indifference to a Serious Medical Need claim against NP Erickson, and John Does 1-10.[26]

16.     Plaintiff also asserts a medical negligence claim against "the agents and employees" of NaphCare.[27]

### III.    STANDARD OF REVIEW

Although the Plaintiff need not submit detailed facts about every part of her complaint, she must provide more than statutory or constitutional labels and statements of legal conclusions in order to prove that she is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a 12(b)(6) motion to dismiss, the Plaintiff must state enough facts so that a claim for

---

[24] Doc. 1, PageID.10-11.
[25] Doc. 1, PageID.12.
[26] Doc. 1, PageID.36-37. Plaintiff improperly suggests Louisiana law governs any damage award.
[27] Doc. 1, PageID.38-39.

relief is plausible on its face. *Id.* at 570. The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While all factual allegations are taken as true the court is not required to take as true legal conclusions masked as factual allegations. *Id.* at 678. Where these factual allegations do no more than infer the mere possibility of misconduct the threshold of plausibility that would give rise to an entitlement for relief has not been met. *Id.* at 679.

Applying this standard here, even under the most favorable reading of the Plaintiff's Complaint, no reasonable inference can be drawn that NP Erickson committed a constitutional violation or engaged in actionable medical negligence.

## IV.   ARGUMENT

**1.   <u>Plaintiff's Complaint Fails, Even Under a Favorable Reading, to State a Claim for Deliberate Indifference to a Serious Medical Need</u>**

    **a.   Plaintiff Fails to Allege Facts Supporting a Plausible Claim of Deliberate Indifference.**

As set forth above, the Plaintiff alleges that NP Erickson violated Locke's Fourteenth Amendment rights by showing a deliberate indifference to his medical needs.[28] To prevail under a claim of deliberate indifference, Plaintiff must satisfy both an objective and subjective inquiry. First, Plaintiff must prove an objectively serious medical need. Next, she must prove that NP Erickson acted with deliberate indifference to that need. *See Andujar v. Rodriguez*, 486 F.3d 1199, 1203 (11th Cir. 2007). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

---

[28] Deliberate Indifference claims brought under the Eighth and Fourteenth Amendment are subject to the same scrutiny. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009).

necessity for a doctor's attention.'" *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (citation omitted).

To establish deliberate indifference, a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). In showing the deliberate indifference, it must be demonstrated that the defendant's response to the medical need was more than "merely accidental inadequacy, 'negligence in diagnosis or treatment,' or even 'medical malpractice' actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citations omitted). As the Supreme Court explained:

> … an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

Here, Plaintiff alleges that NP Erickson was aware of Locke's age, unsteady gait, fall risk, history of alcohol use disorder, participation in a detox protocol, and alleged medication noncompliance, and contends—without factual support—that these circumstances required referral to outside medical care. Plaintiff further asserts, in conclusory terms, that Locke exhibited "symptoms reflective of a serious neurological condition" and that NP Erickson should have performed a more extensive physical or neurological examination. Even accepting these allegations as true and viewing them in the light most favorable to Plaintiff, the Complaint does not plausibly allege that hospital referral was medically required at the time of NP Erickson's

- 8 -

evaluation. Plaintiff does not identify any specific clinical findings demonstrating an emergent neurological condition, does not allege what additional examination would have revealed, and does not explain how any alleged omission deviated from the applicable standard of care or altered Locke's outcome. Rather, the allegations amount to hindsight disagreement with NP Erickson's exercise of medical judgment or claims sounding in ordinary negligence—neither of which is sufficient to state a plausible claim for deliberate indifference.

### b. Plaintiff Fails to Plead Objective Prong of the Deliberate Indifference Standard.

Plaintiff cannot establish the objective component of the deliberate indifference standard. Under the objective component of the deliberate indifference standard, the alleged deprivation must be "the equivalent of recklessly disregarding a substantial risk of serious harm to the inmate." *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quotation omitted). Negligence, malpractice, or an incorrect diagnosis is not enough to establish deliberate indifference. *Estelle*, 429 U.S. at 105-106. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize[s]" the prohibited conduct. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Generally, an inmate who receives a medical diagnosis and care cannot show deliberate indifference. *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985); *see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability . . . .") (quoting *Estelle*, 429 U.S. at 107)); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("We disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment") (quoting *Bowring v. Godwin*, 551 F. 2d 44, 48 (4th Cir. 1977)).

- 9 -

The Eleventh Circuit has been clear that when medical treatment decisions are responsive to an inmate's needs and rooted in professional, medical judgment, a claim for deliberate indifference cannot be sustained. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

Plaintiff fails to satisfy the objective component of a deliberate indifference claim because the Complaint does not allege facts plausibly showing that Locke suffered a sufficiently serious medical need that was caused or exacerbated by any action or omission attributable to NP Erickson or NaphCare. The Complaint contains no factual allegations establishing a causal connection between NP Erickson's conduct and any alleged harm. Nor does it plead facts showing that NP Erickson was aware of, and disregarded, an excessive risk to Locke's health or safety. To the contrary, the allegations reflect that Locke was transferred to the University of South Alabama Hospital for evaluation and treatment following his initial booking on February 15, 2024, and that, upon his subsequent arrest and booking, he had already received hospital-level care and was discharged with a treatment and release plan. On these pleaded facts, Plaintiff cannot establish the existence of an objectively serious medical need that was left untreated by NP Erickson, and thus, the deliberate indifference claim fails as a matter of law.

The Complaint acknowledges that NP Erickson examined Locke on two occasions, but it pleads no facts identifying any specific deficiency in those examinations or linking NP Erickson's conduct to a serious medical harm. Plaintiff's allegation that the examinations were "inadequate" is wholly conclusory and unsupported by factual content. Absent allegations that NP Erickson knowingly disregarded an excessive risk to Locke's health, Plaintiff's claim amounts to nothing more than a disagreement with medical judgment, which is insufficient to state a claim for deliberate indifference as a matter of law.

PD.61270544.1

For example, Plaintiff alleges that NP Erickson's March 18, 2024, assessment was inadequate, yet identifies no ignored symptoms, no denied care, and no assessment so deficient as to constitute no treatment at all. Rather, Plaintiff's claim depends entirely on a disagreement as to professional judgment regarding which assessments should have been performed during Locke's medical examination. The Eleventh Circuit has consistently stated that simply having differing medical opinions does not amount to deliberate indifference. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) ("Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment."). Plaintiff's allegations against NP Erickson, at best, question her medical judgments, and thus, are not an action under the Fourteenth Amendment.

**c.      Plaintiff Fails to Plead the Subjective Prong of the Deliberate Indifference Standard.**

Plaintiff cannot satisfy the subjective component of the deliberate indifference standard. To plead deliberate indifference, a plaintiff must allege facts showing that the defendant had actual, subjective knowledge of a substantial risk of serious harm and consciously disregarded that risk. *Keith v. Naglich*, No. 5:17-cv-01437-AKK, 2018 U.S. Dist. LEXIS 10147, at *9 (N.D. Ala. Jan. 23, 2018). The conduct alleged must rise beyond negligence or error and instead reflect indifference that offends "evolving standards of decency" or is "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This is a demanding standard that "sets an appropriately high bar." *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020).

The Complaint does not plausibly allege that NP Erickson possessed the requisite culpable state of mind. To the contrary, the medical records Plaintiff relies upon demonstrate timely, responsive care inconsistent with deliberate indifference. On March 18, 2024, after Locke reported to LPN Sheila Caulton that he had fallen in his cell earlier that day, he was promptly referred to

- 11 -

the clinic and evaluated by NP Erickson the same day. *See* Doc. 1, PageID.8. These allegations negate—rather than support—any inference that NP Erickson consciously disregarded a known risk of serious harm.

Nor does the Complaint allege facts showing that NP Erickson had actual knowledge that Locke faced a substantial risk of seizure days later. Plaintiff does not allege that, at the time of the March 18 evaluation, Locke exhibited symptoms suggesting an impending seizure or that any objective indicators placed her on notice of a serious and imminent risk. Absent allegations of contemporaneous knowledge, Plaintiff cannot satisfy the subjective prong as a matter of law.

Any contention that NP Erickson should have ordered additional testing or pursued a different course of treatment amounts, at most, to a disagreement with medical judgment. But "'[e]ven assuming that the medical care provided to [the inmate] had been negligently rendered, no constitutional claim arises from what is essentially a claim of medical malpractice....'" *Bedsole v. Clark*, 33 So. 3d 9, 15 (Ala. Civ. App. 2009) (internal citations omitted). The Eleventh Circuit has consistently stated that simply having differing medical opinions does not amount to deliberate indifference. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

In short, Plaintiff has failed to allege facts permitting a reasonable inference that NP Erickson acted with a sufficiently culpable discriminatory state of mind to satisfy the subjective element of deliberate indifference and therefore, when a plaintiff fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," dismissal is appropriate. *Ashcroft*, 556 U.S. at 678. Because the Complaint alleges responsive medical care and, at most, challenges professional judgment, dismissal is warranted.

PD.61270544.1

**2.    Plaintiff's Negligence Claim Against NP Erickson Fails to Satisfy the Pleading Requirements of the Alabama Medical Liability Act**

Plaintiff fails to allege specific acts or omissions by NP Erickson as required by the Alabama Medical Liability Act and therefore fails to provide her with fair notice of the negligent claim. Plaintiff's negligence claim against the agents and employees of NaphCare is premised on the alleged breach of the applicable medical standard of care in the treatment of Locke and is therefore governed by the Alabama Medical Liability Act ("AMLA"). The AMLA imposes heightened pleading requirements. Section 6-5-551 mandates that a plaintiff plead "a detailed specification and factual description of each act and omission alleged" to render a health-care provider liable, including, when feasible, the date, time, and place of each act or omission, and expressly provides that any complaint failing to do so "shall be subject to dismissal for failure to state a claim." Ala. Code § 6-5-551.

Alabama courts have consistently enforced this requirement, holding that an AMLA complaint must give the defendant "fair notice of the allegedly negligent act and must identify the time and place it occurred and the resulting harm." *Mikkelsen v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993). Plaintiff's Complaint falls far short of these standards as to NP Erickson.

Plaintiff asserts negligence claims collectively against "the agents and employees of NaphCare USA, Inc., NaphCare, Inc." (Doc. 1, PageID.38), a broad category encompassing physicians, nurse practitioners, registered nurses, and licensed practical nurses—each governed by distinct standards of care. The Complaint further alleges that the purported misconduct occurred over approximately four weeks. (Doc. 1, PageID.5.) Yet Plaintiff identifies no specific act or omission attributable to NP Erickson during that period beyond generalized assertions that she should have performed a neurological examination or a more extensive physical assessment. *See* Doc. 1, PageID.10.

- 13 -

PD.61270544.1

Alabama and Eleventh Circuit decisions require dismissal where AMLA plaintiffs fail to plead specific acts or omissions with the detail required by statute. See *Murray v. Prison Health Servs., Inc.*, 112 So. 3d 1103 (Ala. Civ. App. 2012); *Adams v. Huntsville Hosp.*, 819 F. App'x 836 (11th Cir. 2020). The Eleventh Circuit's decision in *Gunter v. Advanced Correctional Healthcare, Inc.* squarely supports dismissal here. In *Gunter*, the plaintiff asserted AMLA claims against a correctional healthcare provider and its nurses based on broad allegations that they "knew or should have known" of generalized risks associated with substance abuse and withdrawal. 844 F. App'x 189, 192–94 (11th Cir. 2021). Despite detailed background allegations regarding the decedent's medical history and risk factors, the court held that such generalized assertions— untethered to specific acts or omissions by specific providers—were insufficient to establish foreseeability or state a viable negligence claim under Alabama law. *Id.* at 194.

The pleading deficiencies identified in *Gunter* are even more pronounced here. Like the plaintiff in *Gunter*, Plaintiff relies on sweeping allegations against a correctional healthcare contractor and its employees, without identifying which provider allegedly breached the standard of care, what that provider did or failed to do, when or where the alleged breach occurred, or how it violated the applicable standard of care. Despite a forty-page Complaint, Plaintiff fails to plead a single, specific act or omission attributable to NP Erickson with the detail required by Ala. Code § 6-5-551. Instead, Plaintiff alleges an undifferentiated list of purported failures against all NaphCare agents and employees over the entire course of Locke's confinement requiring NP Erickson and NaphCare to guess which allegations applies to—precisely the type of vague, collective pleading rejected in *Gunter*.

While Plaintiff generally alleges that NP Erickson should have performed a neurological examination or a more extensive physical assessment, the Complaint does not plead facts

- 14 -

explaining why the failure to perform those assessments fell below the applicable standard of care for a nurse practitioner or how performing them would have altered Locke's clinical course or outcome. The AMLA requires more than conclusory assertions that additional testing should have been done; it requires factual allegations identifying the applicable standard of care, the specific manner in which it was breached, and a causal connection between the alleged breach and the claimed injury. Here, Plaintiff does not allege what findings a neurological or physical examination would have revealed, that any such findings were clinically apparent at the time of evaluation, or that NP Erickson had reason to suspect a condition requiring further testing. Absent allegations establishing both a deviation from the standard of care and proximate causation, Plaintiff's claim rests on hindsight criticism and speculation, which is insufficient to state a medical-negligence claim under the AMLA.

Because Plaintiff has failed to comply with the AMLA's mandatory pleading requirements—and because amendment would not cure the fundamental absence of specific factual allegations tying any breach to NP Erickson—Plaintiff's medical-negligence claim against NP Erickson is due to be dismissed with prejudice.

## V.    CONCLUSION

For the foregoing reasons, Defendant Katie Erickson respectfully requests that the Court dismiss the Complaint against her with prejudice.

Respectfully submitted,

*/s/ J. Breanne S. Zarzour*
J. BREANNE S. ZARZOUR
ROSS A. DOCKINS
Attorneys for Defendant Katie Erickson

- 15 -

PD.61270544.1

OF COUNSEL:

**PHELPS DUNBAR LLP**
101 Dauphin Street, Suite 1000
Mobile, Alabama 36602
Post Office Box 2727
Mobile, Alabama 36652
251 432 4481
brie.zarzour@phelps.com
ross.dockins@phelps.com

## CERTIFICATE OF SERVICE

I do hereby certify that I have on March 30, 2026, electronically filed the foregoing with the Clerk of Court using the CMECF filing system, which will serve electronic notifications of such filing to the following:

| | |
|---|---|
| Aaron Maples<br>Maples, Connick & Brendel, LLC<br>411 St. Francis Street, Suite B<br>Mobile, Alabama 36602<br>aaron@maplesconnick.com<br>***Attorney for Plaintiffs*** | Sam Harton<br>Romanucci and Blandin, LLC<br>321 N. Clark Street<br>Chicago, Illinois 60654<br>sharton@rblaw.net<br>***Attorney for Plaintiffs*** |
| Thomas O. Gaillard, III<br>William Kirkland Mattei<br>Helmsing, Leach, Herlong, Newman &<br>Rouse, PC<br>Post Office Box 2767<br>Mobile, Alabama 36652<br>tog@helmsinglaw.com<br>wkm@helmsinglaw.com<br>***Attorneys for Defendant Sheriff Paul Burch*** | Alexander Garrett Zoghby<br>Ava Ringhoffer<br>Jay M. Ross<br>Adams Reese, LLP<br>11 N. Water Street, Suite 23200<br>Mobile, Alabama 36602<br>garett.zoghby@arlaw.com<br>ava.ringhoffer@arlaw.com<br>jay.ross@arlaw.com<br>***Attorneys for Defendant Mobile County*** |
| Jessica Hornbuckle<br>Blackstone Trial Group, PLLC<br>1200 Corporate Drive, Suite 425<br>Birmingham, Alabama 35242<br>jessica@blackstonetrial.com<br>***Attorney for Defendant NaphCare U.S., Inc.*** | |

*/s/ J. Breanne S. Zarzour*
J. BREANNE S. ZARZOUR

- 16 -

PD.61270544.1