**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**MOBILE DIVISION**

| | |
|---|---|
| **TRACY MURRILL,** | ) |
| **AS PERSONAL** | ) |
| **REPRESENTATIVE OF** | ) |
| **ROBERT VINCENT LOCKE,** | ) |
| **DECEASED** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **CASE NO.: 1:26-cv-00017-KD-N** |
| **NAPHCARE, INC., MOBILE** | ) |
| **COUNTY, SHERIFF PAUL** | ) |
| **BURCH, KATIE ERICKSON** | ) |
| **ET AL.** | ) |
| | ) |
| **Defendants.** | ) |

**NAPHCARE ALABAMA LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

COMES NOW Defendant NaphCare Alabama LLC[1] ("NaphCare"), and submits this Reply in support of its Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") (Docs. 59-60) for failure to state a claim pursuant to *Federal Rule of Civil Procedure* 12(b)(6), and in response to Plaintiff's Omnibus response (the "Opposition") (Doc. 66).

[1]This Reply, like NaphCare Alabama LLC's Motion, is filed solely on behalf of NaphCare Alabama LLC. Plaintiff has also named NaphCare LLC, NaphCare Operating LLC, and NaphCare US TX LLC as defendants in the SAC, but none of those entities has been served. NaphCare Alabama LLC accordingly does not address Plaintiff's arguments regarding the corporate relationship among these entities; those questions are not presented by this Motion and are reserved.

## INTRODUCTION

Plaintiff's Opposition confirms, rather than cures, the deficiencies identified in NaphCare's Motion. Despite the opportunity to amend, Plaintiff's SAC failed to include any new factual allegations beyond her original Complaint to support widespread unconstitutional customs at MCMJ.

Plaintiff's Opposition merely attempts to substitute volume for specificity. To overcome her conclusory *Monell* allegations she points to "approximately twenty pages of supporting factual allegations,"[2], but the relevant question is not how many pages surround the custom allegations—it is whether the incidents Plaintiff actually relies on establish a persistent and widespread practice at MCMJ. They do not. Of the eight MCMJ incidents Plaintiff herself pled, her Opposition relies on only three—and the other five do not help her.[3] That is not an oversight. It is a concession.

Plaintiff's remaining arguments fare no better. Her multi-facility theory does not merely fall short of the pattern *Monell* requires — it inverts *Monell*'s threshold inquiry, asking this Court to find customs at MCMJ based on conduct that occurred at other facilities entirely, a standard the Eleventh Circuit has never adopted. The out-of-state incidents she cites happened at other facilities, not MCMJ. Her financial-incentive theory rests on contract terms in Massachusetts, not Alabama.

[2] Doc. 66 at 18–19.
[3] SAC ¶ 136(a)-(h); Doc. 66 at ¶¶ 23-24.

Her causation argument ignores the obvious alternative explanation in her own pleading: Locke's own repeated refusals of care. And her negligence claims still do not specify which NaphCare employee is responsible for which alleged failure. NaphCare's Motion should be granted.

## I. The SAC itself refutes any widespread custom at MCMJ.

### A. Plaintiff relies on three of eight isolated MCMJ incidents to support her custom theories under *Monell*.

The SAC alleges eight discrete incidents at MCMJ over a nine-year span: Brandon Jeffries (June 2015, assault by guards, allegedly did not receive medical care, permanently paralyzed), Ernest James Little, Jr. (June 2023, found unresponsive in his cell, pronounced dead at hospital), Terrell Moultrie (July 2023, allegedly died of an opioid overdose), William Appling, Jr. (July 2023, died in a medical cell after arriving with injuries and allegedly not being sent to the hospital), William Gregory Hooper (August 2023, found unresponsive in his cell), William Franklin (December 2023, found unresponsive in his cell), Elvin Stacy (June 2024, died after complaints of chest pain and heart failure), and a September 2024 incident in which a corrections officer sexually assaulted a hospitalized inmate.[4] This scattershot list—random incidents spanning nearly a decade, involving different

[4] SAC ¶ 136(a)-(h).

medical conditions and different alleged failures—does not establish a persistent and widespread practice.[5]

Even more telling Plaintiff's Opposition does not rely on all eight incidents. It cited only three: (Moultrie), (Appling), and (Stacy) when addressing the MCMJ pattern.[6] A plaintiff cannot plead eight incidents, quietly rely on three, and call the result a "persistent and widespread practice." *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011). If the other five incidents supported the custom Plaintiff alleges, one would expect her to say so, but twice now she has elected not to. Her continued silence confirms that they do not.

**B. The three incidents Plaintiff does rely on do not establish the pled customs.**

Even the three incidents Plaintiff presses do not fit together, or fit the customs she alleges, which are: (1) failure to assess and monitor known serious medical issues and (2) failure to refer or transfer inmates to outside providers.[7] Moultrie allegedly died of an opioid overdose—an acute toxicological event with no apparent connection to a failure to assess a neurological condition. Appling arrived at MCMJ with injuries and was allegedly not sent to the hospital—a single incident that, standing alone, cannot establish a pattern. *Craig*, 643 F.3d at 1310–11 ("[p]roof of a single incident of unconstitutional activity is not sufficient"). And Stacy died in

[5] Doc. 60 at 14–15.
[6] Doc. 66 at 23–24, (citing SAC ¶¶ 136(c), (d), (g)).
[7] SAC ¶ 83 (a)-(b).

June 2024—two months after Locke's own death on April 24, 2024.[8] An incident that occurred after Locke's own death cannot have put NaphCare on notice of anything relevant to his care.

Three isolated incidents consisting of an overdose, a single alleged failure to transfer, and a death that occurred after Locke's own do not add up to a persistent and widespread practice of failing to assess and monitor serious medical issues at MCMJ or a persistent widespread practice of failing to refer and transfer patients to the hospital.

## II. Incidents at other NaphCare facilities do not cure the MCMJ-specific pleading deficiency.

Unable to establish a pattern at MCMJ, Plaintiff falls back on incidents NaphCare allegedly caused at facilities in at least eight other states.[9] She argues that because NaphCare is a national, multi-facility contractor rather than a single local police department, its practices should be evaluated across all of its facilities rather than facility-by-facility.[10]

That argument does not fit this Circuit's law, nor the cases Plaintiff cites. Plaintiff's novel *Monell* theory would let any plaintiff injured at any NaphCare facility establish a widespread custom by aggregating unrelated incidents from dozens of jurisdictions—regardless of whether those incidents share the same

---

[8] SAC ¶ 136(g).
[9] Doc. 66 at 20–24; SAC ¶ 102(a)-(x).
[10] Id. at 20–21.

medical conditions, the same alleged failure, or any connection to the facility where the plaintiff was actually harmed.

**A. Plaintiff's newly asserted corporate-entity theory is not the law in the Eleventh Circuit.**

*Craig* held that a private entity providing correctional medical care "becomes the functional equivalent of the municipality" for § 1983 purposes, *Craig*, 643 F.3d at 1310 (quoting *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997)), and that "[a] single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality." *Id.* at 1311. Nothing in *Craig* carves out an exception for corporate defendants that operate in more than one location. The corporate-entity distinction does not eliminate the requirement that a pattern be shown to exist at the facility where the plaintiff was harmed; it does not even address it, because *Craig* did not involve a multi-facility defendant. Plaintiff's argument that the geographic-scope question is open in this Circuit simply because *Craig's* defendant happened to operate one facility asks this Court to infer a holding *Craig* never made.

**B. The Eleventh Circuit has already rejected the nationwide litigation theory Plaintiff advances.**

In *Jackson v. Corizon Health, Inc.*, a Florida inmate attempted to prove that a national private correctional-medical contractor had a custom of denying hospital transfers to cut costs by relying in part on "the existence of other lawsuits against

Corizon involving the provision of medical services to inmates in other jails and prisons," together with a declaration from a physician describing similar cost pressure at a different facility. *Jackson v. Corizon Health, Inc.*, 2022 U.S. App. LEXIS 3037 at *12,*16 n.4., *19-20 (11th Cir. Feb. 2, 2022). The panel rejected that evidence outright: it was "insufficient... because [the plaintiff] was never an inmate" at the other facility, any relation between the out-of-facility evidence and the plaintiff's own case was "speculative at best," and, "[f]or these same reasons, the existence of other lawsuits against Corizon involving the provision of medical services to inmates in other jails and prisons does not create a genuine issue of material fact as to the existence of the alleged policy, custom, or practice" at the plaintiff's own institution. *Id. Jackson* reached that conclusion at summary judgment, where the evidentiary bar is higher than at the pleading stage—yet the multi-facility litigation history still failed to raise even a triable issue of fact. The SAC's reliance on incidents in eight other states, involving different medical conditions, different employees, and different contracts, fares no better under this Circuit's own reasoning.

**C. Plaintiff's own multi-facility authority confirms facility specific evidence matters to the viability of *Monell* claims.**

*Shields v. Prince George's County*, held that a private, multi-state medical contractor's litigation history across fourteen states could establish a *Monell* custom without any incident at the facility where the plaintiff died. *Shields v. Prince*

*George's County,* 2016 U.S. Dist. LEXIS 118924 at *23–*27. (D. Md. Sept. 1, 2016). But *Shields* is not binding on this Court, applies Fourth Circuit rather than Eleventh Circuit doctrine, and never once addresses *Craig* or the Eleventh Circuit's single-incident and facility-specificity requirements. *Id.* at *24, *27. It is also factually remote from this case: the *Shields* complaint contained twenty-two pages of allegations describing documented prior lawsuits, government deficiency reports, and a contract termination following eleven deaths at a single facility—a substantially more developed record than the allegations here. *Id.* at *24. The SAC contains no comparable showing.

Plaintiff's remaining multi-facility authority does not go as far as *Shields*. In *Kendall v. Fulton Cnty.*, the Court denied a motion to dismiss where the plaintiff pled five specific deaths at the same jail in addition to a comparative death-rate statistic against another facility (Rikers Island)—a combination Plaintiff has not pled here, since, as shown above, none of the eight cited MCMJ incidents or the three MCMJ incidents Plaintiff actually relies on establishes the customs she alleges. *Kendall v. Fulton Cnty.*, 2024 U.S. Dist. LEXIS 50950, at *6–7, *19–20 & n.5 Even so, the *Kendall* court itself flagged the limits of that pattern evidence: "[t]he Court recognizes that the extent of the similarities between the five specific inmate deaths Plaintiff alleges—as well as the many other deaths Plaintiff asserts but provides no details about—are unknown," and cautioned that "[t]he facts may ultimately show

that these prior instances were not sufficiently similar to demonstrate deliberate indifference." *Id.* at *21 n.6. That caution applies with even greater force here, where the MCMJ-specific incidents Plaintiff relies on—an overdose, a single alleged failure to transfer, and a death that occurred after Locke's own—are further afield from the pled custom than the incidents in *Kendall*. In *Heath v. Miami-Dade County*, the pattern evidence that survived included a Department of Justice investigation, a nine-year federal consent decree, active judicial supervision, the resignation of an independent monitor, and a contemporaneous witness at the same facility with the identical diagnosis—an extraordinary record with no MCMJ analog. *Heath v. Miami-Dade County*, 736 F. Supp. 3d 1149, 1155–56, 1163–64 (S.D. Fla. 2024). In *Boyer v. Advanced Correctional Healthcare*, the court relied on nineteen incidents at the same jail together with twenty incidents at other facilities nationwide—not a nationwide catalog standing alone. *Boyer v. Advanced Correctional Healthcare*, 2023 U.S. Dist. LEXIS 103082, at *11–13, *21–22 ("other detainees at the same jail, and the treatment of other detainees in ACH's care across the country") (emphasis added). And in *Herr v. Volusia County*, 2019 U.S. Dist. LEXIS 237402 (M.D. Fla. Sept. 9, 2019), the surviving custom allegation against the medical contractor was framed as "similar incidents involving Defendant [Armor] in other county jails in Florida and in Volusia County"—a facility-specific reference, not merely a nationwide one—and the plaintiff separately represented that two of the roughly one

hundred lawsuits she intended to rely on arose from care provided in Volusia County itself, the same facility where her husband died. *Herr v. Volusia County*, 2019 U.S. Dist. LEXIS 237402 at *13–14 & n.5 (M.D. Fla. Sept. 9, 2019). Even so, the *Herr* Court acknowledged that "the extent of the similarities between these incidents remains uncertain at this stage." *Id.* at *14 n.5. *Heath*, *Boyer*, and *Herr* are all out-of-circuit authority that, like *Kendall*, never addresses *Craig*.

*Kendall*, *Heath*, *Boyer*, and Herr all rest on facility-specific evidence; multi-facility evidence, where it appears, only supplements that showing—it does not replace it. Only *Shields* dispenses with a facility-specific anchor entirely—and it is non-binding, out-of-circuit authority resting on a far more developed record than the SAC contains, that does not grapple with *Craig* at all. MCMJ has none of the facility-specific pattern evidence *Kendall, Heath, Boyer*, and *Herr* required. The eight incidents Plaintiff pled at MCMJ, discussed above, do not establish the customs she alleges—and incidents in eight other states involving different medical conditions, different employees, and different contracts do not fill that gap. Incidents at geographically distinct facilities involving different employees, different patients, different medical conditions, and different contractual arrangements bear no relevant connection to whether NaphCare maintained unconstitutional customs at MCMJ.[11] Plaintiff still does not explain how a failure to treat a bowel obstruction in the Suffolk

[11] Doc. 60 at 14.

County House of Corrections[12] establishes a custom of failing to assess and refer patients with neurological conditions at MCMJ.

**D. The majority of Plaintiff's cited out-of-state catalog does not contain any adjudicated findings that NaphCare engaged in wrongdoing.**

Plaintiff argues that rejecting her multi-facility theory would mean that "a corporate entity's unconstitutional conduct must be ignored because it is too widespread such that it applies in all their facilities."[13] That argument assumes the very thing it needs to prove: that unconstitutional conduct was in fact found at those other facilities. It was not. Only two of the incidents Plaintiff catalogs reflect an actual jury verdict against NaphCare.[14] Others were resolved by settlement, which is not an admission of liability and is routinely reached for reasons having nothing to do with the merits.[15] Four more incidents Plaintiff recites—Dixon, Blackshear, Goonan, and Campell—are sourced entirely to unproven allegations in a single, separate, still-pending lawsuit, *Trammell v. Montgomery County*), not to any judgment, finding, or admission.[16] And the remainder rest on nothing more than a cited news article, with no lawsuit, judgment, or admission of any kind. A settlement that admits nothing, and another plaintiff's untested allegations copied into the SAC,

---

[12] SAC ¶ 102(s).
[13] Doc. 66 at 22.
[14] SAC ¶ 102(a) (Tapia, Pierce County, $25 million verdict); ¶ 102(b) (Hill, Spokane County, $24 million punitive verdict).
[15] Fed. R. Evid. 408(a). SAC ¶ 102(r) (NaphCare settlement resolving the Cantu matter); ¶ 102(k) (Fulton County—not NaphCare—"settled that case for $4 million").
[16] SAC ¶ 102(m)-(o), (q) & nn.18–20, 22.

prove no more than the "existence of other lawsuits" this Circuit has already rejected. *See supra* Part II.2 (discussing *Jackson*, 2022 U.S. App. LEXIS 3037, at *12,*16 n.4, and *20). Plaintiff cannot treat "widespread unconstitutional conduct" as an established premise when her own catalog does not establish that any such conduct was ever adjudicated at most of the facilities she lists.

## III. The SAC does not plead a NaphCare-specific financial incentive at MCMJ.

Plaintiff's financial-incentive theory rests on a Mobile County Commissioner's 2020 statement about the County's own budget concerns, not any NaphCare policy at MCMJ.[17] The SAC does not allege NaphCare made any comparable statement to MCMJ staff or that its MCMJ contract contained the bonus or penalty provisions pled for other facilities in Massachusetts.[18] A generalized profit motive, untethered to any facility-specific mechanism, is not a custom. Plaintiff's nationwide catalog does not fill that gap; an unrelated death in Massachusetts, does not establish a financially motivated custom at MCMJ.[19]

## IV. The Complaint's Own Allegations Defeat "Moving Force" Causation.

Even if Plaintiff had pled a widespread custom—she has not—the SAC's own allegations defeat any plausible showing that a custom was the "moving force"

[17] SAC ¶ 166; Doc. 66 at 24.
[18] SAC ¶¶ 117, 119.
[19] SAC ¶ 102(s).

behind Locke's death. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Locke refused medication at least thirteen times in the four weeks before his death and separately refused blood-pressure checks—the SAC's own "more likely explanation" for gaps in his care.[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). He was also transferred to the University of South Alabama Hospital thirty-three days before he died, where he underwent an emergent craniotomy and ultimately died following more than a month of hospital care outside NaphCare's custody.[21] The SAC does not allege any NaphCare custom caused those intervening events. Plaintiff argues there is "no principled distinction" between this case and *Smothers*.[22] However, *Smothers* is distinguishable: it involved a contractor with no licensed physicians on staff, run by a nurse who held himself out as a physician, and a developed summary-judgment record, whereas here we are at the pleading stage and it is undisputed NaphCare employed a licensed physician and nurse practitioner who evaluated Locke.[23] *Smothers v. Childers*, 159 F.4th 922, 925-27, 934 (11th Cir. 2025).

**V. The Negligence Claims Still Fail for Lack of Fair Notice.**

Plaintiff's negligence counts fail under Rule 8(a)(2)—not, as Plaintiff assumes, under AMLA's particularity requirement, which NaphCare preserved in a

[20] SAC ¶¶ 32, 34–47.
[21] SAC ¶¶ 69, 73–76; Doc. 60 at 18.
[22] Doc. 66 at 25 n. 5.
[23] SAC ¶¶ 44, 50.

footnote and did not press as a pleading matter.[24] Counts II.A and II.B assert an undifferentiated list of negligence specifications against "NaphCare" and its unnamed "agents and employees," without identifying which employee's conduct is at issue, that employee's role, or the applicable standard of care.[25] Naming four individuals elsewhere in the SAC does not tell NaphCare which of the specifications across the SAC is directed at which individual. *Twombly*, 550 U.S. at 555.

## CONCLUSION

For the foregoing reasons in addition to those stated in NaphCare Alabama LLC's contemporaneously filed brief in support of its Motion to Dismiss, NaphCare respectfully requests the Court to dismiss with prejudice all claims asserted against it in Plaintiff's Second Amended Complaint.

Respectfully submitted,

*s/ Jessica A. Hornbuckle*

Jessica A. Hornbuckle (ASB-2464-E98L)
Blackstone Trial Group
1200 Corporate Dr., Suite 425
Birmingham, Alabama 35242
Telephone: (659) 241-4619
E-mail: jessica@blackstonetrial.com
*Counsel for Defendant, NaphCare Alabama LLC*

[24] Doc. 60 at 18–20 & n.51.

[25] Doc. 60 at 18–20; SAC ¶¶ 208(a)-(l), 211(a)-(h).

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2026, I electronically filed the foregoing with the CM/ECF system, which will send electronic notification of such filing to the following:

Aaron Maples
Maples, Connick & Brendel, LLC
411 St. Francis St., Ste. B
Mobile, AL 36602
Email: aaron@maplesconnick.com

Sam Harton
Romanucci and Blandin, LLC
321 N. Clark St.
Chicago, IL 60654
Email:sharton@rblaw.net

Breanne Zarzour
Ross Dockins
PHELPS DUNBAR LLP
P.O. Box 2727
Mobile, AL 36652
Email: Brie.Zarzour@phelps.com
Email: Ross.Dockins@phelps.com
*Attorneys for Katie Erikson*

Garrett Zoghby
Jay Ross
Ava Ringhoffer
Adams & Reese, LLP
P.O. Box. 1348
Mobile, Alabama 36633
Email: jay.ross@arlaw.com
garrett.zoghby@arlaw.com
ava.ringhoffer@arlaw.com
*Attorneys for Mobile County, Alabama*

Thomas O. Gaillard, III
William Kirkland Mattei
Helmsing, Leach, Herlong, Newman & Rouse PC
P.O. Box 2767
Mobile, Alabama 36652
*Attorneys for Defendant Sheriff Paul Burch*

*s/Jessica A. Hornbuckle*
Jessica A. Hornbuckle (ASB-2464-E98L)
OF COUNSEL